## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| KERRY TEEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-3991 |
| | § | |
| HOSPITAL PARTNERS OF AMERICA INC., | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Kerry Teel sued his former employer, Hospital Partners of America, Inc. ("HPA"), in state court, seeking a declaratory judgment that the noncompetition covenant in the employment agreement he had signed was unenforceable. Teel also alleged a right to recover damages from HPA's efforts to enforce the agreement. HPA timely removed the suit to federal court. Both parties moved for summary judgment. (Docket Entry Nos. 8, 9). Based on a careful review of the motions, responses, and replies; the parties' submissions; the record; and the applicable law, this court grants HPA's summary judgment motion and denies Teel's summary judgment motion. The reasons for these holdings are set out below.

## I.    Background

HPA is a North Carolina corporation that purchases distressed hospitals and attempts to make them profitable. On January 1, 2004, HPA acquired Twelve Oaks Medical Center

("Twelve Oaks") in Houston, Texas.  Teel was Twelve Oaks's Chief Executive Officer.  On November 17, 2003, Teel signed an employment agreement with HPA.

Under the employment agreement, Teel was to be Twelve Oaks's Chief Executive Officer for at least one year, beginning on January 1, 2004.  (Docket Entry No. 8, Ex. C). Teel was to receive an annual salary of $233,000.00, be eligible for an annual bonus, and receive 5,000 stock options.  The options would "vest 25% at the end of [Teel's] first year of employment and then quarterly over the next three years."  (*Id.*, Ex. C at 2).  The agreement also contained noncompetition, nondisclosure, and nonsolicitation covenants.  The noncompetition covenant prohibited Teel from owning, acquiring, developing, or managing a competing hospital located within a 25-mile radius of an HPA facility or a facility that HPA was actively pursuing, for one year after his HPA employment ended.  Under the "Termination" provision, Teel could terminate his employment with HPA for any reason with 30 days prior written notice.  HPA could terminate Teel's employment at any time with just cause, or with 30 days prior written notice without just cause.  If HPA terminated Teel's employment without just cause, Teel would receive a severance package that included a maximum of a year's salary and benefits.  The agreement conditioned Teel's right to the severance package "on [Teel] delivering a signed and effective release agreement in form and substance reasonably satisfactory to Employer."  (*Id.*, Ex. C at 8).

On July 26, 2006, HPA notified Teel by letter that it was terminating his employment without just cause.  Instead of providing 30 days written notice, HPA enclosed a check for the compensation that Teel would have earned during the 30-day notice period.  The letter

reminded Teel that he would not receive any severance payments until he executed a satisfactory release agreement.

After the termination of Teel's employment with HPA, he sought employment at other hospitals, including HPA competitors covered by the noncompetition covenant. Teel and HPA negotiated the terms of the release agreement, focusing primarily on the scope of the noncompetition covenant. On July 17, 2006, HPA sent Teal a proposed release agreement that limited the noncompetition restriction to physician-owned hospitals. (Docket Entry No. 8, Ex. F). Teel ultimately rejected the proposed release, (*id.*, Ex. C at 26), and on August 24, 2006, filed his state-court suit alleging that the covenant in the employment agreement was unenforceable. (Docket Entry No. 1, Ex. 1).

Teel stated in his deposition that in August 2006, while he was still negotiating the terms of his release agreement with HPA, he received a conditional offer of employment as CEO of University Hospital Systems ("University") in Houston, Texas. This employment offer was conditioned on University receiving a release from HPA. On December 8, 2006, Teel's counsel faxed HPA a signed version of a proposed release agreement. (Docket Entry No. 8, Ex. H). This version was broader than the agreement that HPA had asked Teel to sign before he filed suit. The revised version deleted the language limiting the noncompetition covenant to physician-owned hospitals. Instead, the revised release agreement stated that "all post-termination obligations of Executive under the Employment Agreement shall remain in full force and effect . . . including, but not limited to, the restrictions on competition set forth therein." (*Id.*, Ex. G at 1). The revised release agreement also added a merger clause

3

stating that "this Agreement . . . supersedes all prior agreements between the parties, whether such agreements be in writing or oral." (*Id.*, Ex. G at 5).

On December 15, 2006, HPA's counsel informed Teel's counsel that HPA refused to pay the severance package. Todd Johnson, HPA's Chief Executive Officer, stated in his deposition that during the parties' negotiations over the release agreement, Teel had been in "active discussions with direct competitors"—other physician-owned hospitals—in the same market HAP served. (*Id.*, Ex. A at 28–29). Johnson testified that HPA refused to allow an employee to try to violate the noncompetition covenant and then seek to enforce the severance provisions.

Both parties filed summary judgment motions. (Docket Entry Nos. 8, 9). Although Teel sued to have the noncompetition covenant declared unenforceable, he sought summary judgment that he was entitled to be paid the severance package. (Docket Entry No. 8). Teel argues that the only reason why HPA refused to pay Teel's severance package "is that HPA feels that Teel took too long to return the release." (*Id.* at 6). Teel contends that "there is nothing in the employment agreement that requires the release to be signed within a specified period of time." (*Id.* at 6). Teel also argues that HPA paid severance payments to Scott Koenig, who succeeded Teel as Twelve Oaks's CEO and then left, even though Koenig also took five months to sign a release agreement after the termination of his employment without cause.

HPA argues that the noncompetition covenant was valid and enforceable. HPA also contends that Teel cannot seek to enforce the severance provision of his employment

agreement after rejecting HPA's proposed release agreements, delaying signing the release while seeking to evade his noncompete obligations, and filing suit for a declaratory judgment that the noncompetition covenant was unenforceable only when his efforts to find employment with HPA's competitors proved unsuccessful.

The arguments are analyzed below.

## II.    The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Lincoln General Ins. Co. v. Reyna*, 401 F.3d (5th Cir. 2005) (citing  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element or claim.  *Celotex*, 477 U.S. at 330.  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case.  *Bourdeaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005).  "An issue is material if its resolution could affect the outcome of the action."  *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 535 (5th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251–52 (1986)).  If the moving party fails to

5

meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). This burden is not satisfied by "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Young v. ExxonMobil Corp.*, 155 Fed. Appx. 798, 800 (5th Cir. 2005).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255; *Young*, 155 Fed. Appx. at 800. "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Beard v. Banks*, 126 S.Ct. 2572, 2578 (2006) (quoting *Celotex*, 477 U.S. at 322).

## III.   Analysis

In his summary judgment motion, Teel argues that he is entitled to his severance package and attorney's fees because he sent HPA the signed release agreement required by

6

the termination provisions of his employment agreement.  Teel contends that "[t]he mere fact that this release was not provided within some unspecified time frame is immaterial."  Teel points to the experience of his successor, Scott Koenig, who delayed in sending HPA a signed release agreement, but received his severance package.  (Docket Entry No. 8 at 9). Teel asserts that "[t]he issue of whether the non-competition provisions were valid is no longer an issue" because the covenant's twelve-month period has expired.  (Docket Entry No. 8 at 2).

HPA responds that Teel's original complaint seeking to declare the noncompetition covenant unenforceable does not support his summary judgment motion asserting breach of the obligation to pay severance.  HPA argues that the motion should be denied "because it purports to establish and seek relief upon a claim that has never been advanced in this action."  (Docket Entry No. 10 at 3).  HPA argues that Teel has advanced inconsistent arguments in this litigation, asserting in his complaint that the employment agreement was unenforceable, but seeking in his summary judgment motion to enforce the employment agreement to receive his severance payment as damages for breach of that agreement.  HPA argues that even if Teel had alleged breach of the contractual severance obligation, summary judgment is improper because there is a fact issue as to whether HPA's refusal to accept Teel's belated release and pay him severance benefits was a breach of contract.

In its summary judgment motion, HPA argues that the noncompetition covenant is valid and enforceable because it is reasonably limited as to time, geographic scope, and activity to be restrained and because the covenant does not impose a greater restraint than

7

necessary to protect HPA's interests.  HPA contends that whether Teel was an at-will or term employee is irrelevant to the issue of the covenant's enforceability.  Teel has not responded to HPA's summary judgment arguments.

The parties rely on Texas law, but the employment agreement contains a choice-of-law provision stating that the agreement "shall be governed by and construed in accordance with the laws of the State of North Carolina without regard to conflicts of law principles thereof."  Out of an abundance of caution, this court examines the covenant under both North Carolina and Texas law.  (Docket Entry No. 8, Ex. C at 9).

The validity of the noncompetition covenant is not moot, as Teel argues, because in his complaint Teel seeks damages resulting from HPA's attempted enforcement of the covenant.  Whether Teel is entitled to damages depends on the enforceability of the covenant. Under North Carolina law, a covenant not to compete is valid and enforceable if it is: (1) in writing; (2) made a part of the employment contract; (3) based on valuable consideration; (4) reasonable as to time and territory; and (5) designed to protect a legitimate business interest of the employer.  *See Okuma Am. Corp. v. Bowers*, 638 S.E.2d 617, 619 (N.C. Ct. App. 2007); *see also Calhoun v. WHA Med. Clinic, PLLC*, 632 S.E.2d 563, 571 (N.C. Ct. App. 2006).  The promise of new employment is valuable consideration in support of a covenant not to compete.  *See Farr Assocs., Inc. v. Baskin*, 530 S.E.2d 878, 881 (N.C. Ct. App. 2000); *see also CNC/Access, Inc. v. Scruggs*, No. 04 CVS 1490, 2006 WL 3350854, at *7 (N.C. Super. Nov. 15, 2006).  In examining the reasonableness of the time and geographic limits of a noncompetition covenant, a court considers six factors: (1) the area, or scope, of the

8

restriction; (2) the area assigned to the employee; (3) the area where the employee actually worked or was subject to work; (4) the area in which the employer operated; (5) the nature of the business involved; and (6) the nature of the employee's duty an his knowledge of the employer's business.  *Kinesis Advertising, Inc. v. Hill*, 652 S.E.2d 284, 294 (N.C. Ct. App. 2007).   The time and geographic limitations of a noncompetition covenant must be considered in tandem, "such that a longer period of time is acceptable where the geographic restriction is relatively small, and *vice versa*."  *Okuma*, 638 S.E.2d at 620 (internal quotations and citations omitted); *see also Kinesis*, 652 S.E.2d at 294.  The North Carolina Supreme Court has stated:

> If the nature of the employment is such as will bring the employee in personal contact with patrons or customers of the employer, or enable him to acquire valuable information as to the nature and character of the business and the names and requirements of the patrons or customers, enabling him by engaging in a competing business in his own behalf, or for another, to take advantage of such knowledge of or acquaintance with the patrons and customers of his former employer, and thereby gain an unfair advantage, equity will interpose in behalf of the employer and restrain the breach . . . providing the covenant does not offend against the rule that as to time . . . or as to the territory it embraces it shall be no greater than is reasonably necessary to secure the protection of the business or good will of the employer.

*United Labs., Inc. v. Kuykendall*, 370 S.E.2d 375, 381 (N.C. 1988).

The noncompetition covenant in the parties' employment agreement is enforceable under North Carolina law.   The covenant was in writing, was a part of the parties' employment contract, and was based on HPA's offer of new employment to Teel.  The time and geographic restrictions are reasonable.  The one-year period in the covenant falls well

within the established parameters for reasonable noncompetition covenants in North Carolina. *See Farr Assocs.*, 530 S.E.2d at 881 ("A five-year time restriction is the outer boundary which our courts have considered reasonable . . . ."); *see also Precision Walls, Inc. v. Servie*, 568 S.E.2d 267, 273 (N.C. Ct. App. 2002) (upholding a one-year restriction); *Triangle Leasing Co., Inc. v. McMahon*, 393 S.E.2d 854 (N.C. 1990) (upholding two-year restriction); *United Labs.*, 370 S.E.2d 375 (upholding eighteen-month restriction); *Whittaker Gen. Med. Corp. v. Daniel*, 379 S.E.2d 824 (N.C. 1989) (upholding two-year restriction); *Harwell Enters., Inc. v. Heim*, 173 S.E.2d 316, 320 (N.C. 1970)(upholding a nationwide two-year restriction). North Carolina courts have also upheld "client-based" limits based on where the employer does business, like HPA's noncompetition covenant. *See Okuma*, 638 S.E.2d at 620 (upholding a client-based limitation effective in North and South America for six months); *see also Triangle Leasing*, 393 S.E.2d at 858 (upholding a in-state, client-based limitation effective for two years); *Wade S. Dunbar Ins. Agency, Inc. v. Barber*, 556 S.E.2d 331 (N.C. Ct. App. 2001) (upholding a two-year nonsolicitation covenant applicable to all customers with an active account with the employer).

In addition, the HPA noncompetition agreement is limited to "hospitals which are of the type that compete with the hospitals in which Employer has a direct or indirect material equity interest." Johnson stated in his deposition that these were acute care, physician-owned hospitals. (Docket Entry No. 8, Ex. A at 23–24). In his affidavit, Johnson stated that HPA's business model relies on joint venture arrangements with interested physicians. (Docket Entry No. 9, Ex. B at 2). Johnson testified that as CEO of Twelve Oaks, Teel had access to

10

"inside information" about the terms of partnership agreements, business strategies, the identities of investors and the levels of their investments, and templates for structuring transactions that HPA had spent several years developing. (*Id.*, Ex. A at 9–10).  Considering the nature of HPA's business and Teel's senior position at Twelve Oaks, the limits to one year and to areas where HPA already has a facility or is actively pursuing the development or acquisition of a facility are reasonable.  By restricting the noncompetition covenant to physician-owned hospitals providing acute care, the covenant is limited to protecting HPA's legitimate interests in protecting the confidentiality of proprietary information about its business.  Under North Carolina law, the noncompetition covenant is enforceable.

Under Texas law, a noncompetition covenant is enforceable "if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee."  TEX. BUS. & COM. CODE § 15.50.  For a noncompetition covenant to be ancillary to or part of an otherwise enforceable agreement, the employer must establish: "(1) that the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and (2) that the covenant must be designed to enforce the employee's consideration or return promise for the otherwise enforceable agreement." *Alex Sheshunoff Mgmt Servs., L.P. v. Johnson*, 209 S.W.3d 644, 649 (Tex. 2006) (quoting *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 647 (Tex. 1994)).  An agreement must give rise to

an "interest worthy of protection" by a noncompetition covenant, such as business goodwill and confidential or proprietary information.  *Id.* (citing *Light*, 883 S.W.2d at 647).  An employer's promise to provide an employee with confidential or proprietary information and an employee's reciprocal promise not to disclose such confidential information "would meet the requirement that the covenant be designed to enforce the employee's consideration provided in the agreement."  *Id.* (citing *Light*, 883 S.W.2d at 647).

In cases involving at-will employment in which the employer is at liberty to fire the employee before providing the promised confidential or proprietary information, the Texas Supreme Court has held that a noncompetition covenant becomes enforceable if, after the employment agreement is made, "the employer performs his promise and a unilateral contract is formed . . . and all other requirements under the [Covenants Not to Compete Act] are met."  *Id.* at 655.  The *Alex Sheshunoff* court found that an employer's noncompetition covenant was enforceable because by the time the employee left his job, the employer had provided confidential information and specialized training to the employee as promised in the parties' employment agreement and the employee "had promised in return to preserve the confidences of his employer."  *Id.*  The covenant prohibited the employee from calling on the employer's clients for one year after the termination of his employment.

In an at-will employment relationship, either party may terminate employment "for good cause, bad cause, or no cause at all."  *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998).  Employment is at will "when the term of service is left to the discretion of either party."  *Benoit v. Polysar Gulf Coast, Inc.*, 728 S.W.2d 403, 406 (Tex.

12

App.—Beaumont 1987, writ ref'd n.r.e.) (quoting *East Line & R.R.R. Co. v. Scott*, 10 S.W. 99, 102 (Tex. 1888)).   The parties' agreement provided that "[f]or the term of this Agreement, [Teel] shall be employed as Chief Executive Officer of Twelve Oaks Medical Center." (Docket Entry No. 9, Ex. A at 1).   The agreement's term of employment was to last "for a period of one (1) year and thereafter until terminated by [Teel] upon not less than thirty (30 days) prior written notice or as otherwise terminated in accordance with this Agreement," unless the agreement was "earlier terminated pursuant to Section 7 [the "Termination" provision of the agreement]."   (*Id.*, Ex. A at 1).   Under the termination provision, HPA had the right to terminate Teel at any time with just cause, or without just cause "upon 30 days prior written notice."   (*Id.*, Ex. A at 8).   The Texas Supreme Court has found that a promise to provide notice before firing an employee does not support a noncompetition covenant because such a notice requirement does not "give rise to the employer's interest in restraining the employee from competing."   *See Alex Sheshunoff*, 209 S.W.3d at 649, 650.   In contrast, a promise to provide confidential or proprietary information can support an enforceable noncompetition covenant because such a promise does give rise to the employer's interest in restraining the employee from competing.   *See id.* at 650–61.   In an at-will employment relationship, an employer's promise to provide confidential or proprietary information is executory—and an employees' promise not to compete is unenforceable—until the employer performs by providing the promised information.   *See id.* at 651.   The performance is consideration for the employee's promise not to compete and makes that promise enforceable.

13

The HPA agreement stated that Teel's employment "will involve access to and work with" confidential information.  (Docket Entry No. 9, Ex. A at 3).  HPA asserts, and Teel does not dispute, that during the term of his employment, Teel received "a wide collection of confidential and proprietary information and data" concerning HPA's acquisition strategies and physician-participation business model, compensation and benefits formulas, and managed-care contracts and payment rates.  (Docket Entry No. 9 at 3–4).  Because HPA provided Teel with promised confidential information, by the time Teel left HPA, "the [parties' non-competition] agreement had become an enforceable unilateral contract." *Alex Sheshunoff*, 209 S.W.3d at 655; *see also Hardy v. Mann Frankfort Stein & Lipp Advisors, Inc.*, No. 01-05-01080-CV, --- S.W.3d ----, 2007 WL 1299661, at *10–11 (Tex. App.—Houston [1st Dist.] May 3, 2007, pet. filed).

The restrictions of the parties' noncompetition covenant were reasonable.  Texas courts have enforced covenants with similar or greater restrictions.  *See Alex Sheshunoff*, 209 S.W.3d 644 (covenant prohibited employee from providing consulting services to employer's clients for one year and from selling competing product for two years); *Amey v. Barrera*, No. 13-01-00130-CV, 2004 WL 63588 (Tex. App.—Corpus Christi Jan. 15, 2004, no pet. h.) (covenant prohibited flower shop seller from doing any floral business in city where shop was located or in surrounding area for five years); *Stone v. Griffin Commc'ns and Security Sys., Inc.*, 53 S.W.3d 687 (Tex. App.—Tyler 2001, no pet. h.) (covenant prohibited employee from competing in territory in which employee worked during his employment for five years).  Given the senior position Teel occupied and the proprietary information he received

14

during his employment, the one-year prohibition on employment with physician-owned hospitals directly competing with HPA was no greater than necessary to protect HPA's business interests.  Under Texas law, the noncompetition covenant is valid and enforceable.

Because the noncompetition covenant is enforceable under both North Carolina and Texas law, Teel may not recover damages resulting from HPA's attempts to enforce it. HPA's summary judgment motion is granted.

In his summary judgment motion, Teel seeks to enforce the severance provision of his employment agreement.  Teel and argues that he "has met all conditions precedent and required of him in order to be paid this severance."  (Docket Entry No. 9 at 9).  Teel's complaint, however, sought only a "declaration that The Agreement and 'non-compete' covenant are unenforceable" and "damages as a result of HPA's attempted enforcement of the Agreement, including but not limited to" lost income, purchase of company stock, and lost benefits.  (Docket Entry No. 1, Ex. A at 6).  Teel has not sought to amend his complaint.

HPA contends that even if Teel's original complaint had stated a claim for breach of the obligation to pay the severance package, summary judgment is not proper because a fact issue exists "as to whether HPA unlawfully failed to honor its agreement with [Teel]." (Docket Entry No. 10 at 5).  The severance provision of the parties' employment agreement required Teel to deliver a "signed and effective release agreement in form and substance reasonably satisfactory to Employer."  (Docket Entry No. 8, Ex. C at 8).  HPA argues that "what [HPA] was prepared to find 'reasonably satisfactory' as to the terms of a release

15

agreement in July 2006, and what it would find to be so five months later, were two very different things." (Docket Entry No. 10 at 4). In his deposition, Johnson stated that between the termination of Teel's employment and Teel's execution of the release agreement, Teel and his counsel had rejected HPA's proposed release agreement, Teel had attempted to violate the noncompetition covenant by seeking employment with physician-owned hospitals in Houston, and Teel had filed suit in state court seeking a declaration that the noncompetition covenant was unenforceable. Johnson testified that "the facts and circumstances [of Teel's signed release in December] were dramatically different than they were back in July." (Docket Entry No. 8, Ex. A at 33). Johnson stated that the period for Teel to sign the release agreement expired when Teel and his counsel "aggressively rejected" HPA's proposed release and asserted that Teel would not agree to any kind of noncompetition provision.

Teel has not responded to HPA's argument. HPA's argument that a fact issue exists as to whether HPA breached its contract with Teel by refusing to pay his severance package is persuasive. Under the employment agreement, Teel's right to receive severance payments was conditioned on signing an "effective release agreement in form and substance reasonably satisfactory to Employer." (Docket Entry No. 8, Ex. C at 8). A fact issue exists as to whether the release agreement that Teel signed in December 2006 was "in form and substance reasonably satisfactory to" HPA, such that Teel is entitled to his severance package.

Teel's summary judgment motion is denied.

16

**IV.    Conclusion**

Teel's summary judgment motion is denied.  HPA's summary judgment motion is granted.  A hearing is set for **February 20, 2008, at 5:00 p.m.**, to determine issues remaining for resolution and set a schedule for resolving them.

SIGNED on February 6, 2008, at Houston, Texas.

Lee H. Rosenthal
United States District Judge